UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOCAL 283 OF THE INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,                    CASE NO. 08-10650
CHAUFFEURS, WAREHOUSEMEN                      HON. LAWRENCE P. ZATKOFF
AND HELPERS,

      Plaintiff,

vs.

PARK-RITE DETROIT, LLC,

      Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
Federal Building, in the City of Port Huron, State of
Michigan, on the 17th day of February, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on the parties' cross Motions for Summary Judgment. The

Court finds that the facts and legal arguments pertinent to the parties' Motions are adequately

presented in the parties' papers, and the decision process will not be aided by oral arguments.

Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the Motions be

resolved on the briefs submitted, without this Court entertaining oral arguments.  For the reasons

that follow, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for

Summary Judgment and to Vacate Arbitration Award is GRANTED.

## II.  BACKGROUND

Defendant is one of several contractors that manages parking lots and garages owned by the

City of Detroit pursuant to contracts awarded by the City of Detroit.  Central Parking is another such

contractor.  Employees of Defendant are represented by Plaintiff.  Plaintiff also represents

employees of Central Parking and other contractors managing parking lots and garages for the City of Detroit.

In 2002, 2003 and until April 2004, Defendant managed the Cultural Center Garage pursuant to a contract with the City of Detroit.  During that time, Albert Crenshaw ("Crenshaw") was employed by Defendant.  In April 2004, the City of Detroit terminated Defendant's contract to manage the Cultural Center Garage and awarded that contract to Central Parking.  When Central Parking took over the management contract for the Cultural Center Garage in April 2004, Crenshaw terminated his employment with Defendant and began employment with Central Parking.

Effective January 1, 2007, Defendant once again was awarded the contract to manage the Detroit Cultural Center Garage.  Defendant elected to hire all persons employed by Central Parking at this location, except for Crenshaw.  On January 10, 2007, Crenshaw filed a grievance through Plaintiff, wherein he protested that he had not been hired by Defendant.  The collective bargaining agreement between Plaintiff and Defendant (the "CBA") provides for a three-step grievance procedure culminating in a hearing before the Industrial Board Arbitration Committee (the "Industrial Board"), which is made up of Plaintiff representatives and management representatives of companies whose employees represented by Plaintiff. The Industrial Board first heard Crenshaw's grievance on April 16, 2007.  Defendant argued that (1) the grievance was not arbitrable since Defendant was not subject to the agreement between Central Parking and Plaintiff, and (2) Article IV of the CBA was not applicable to Defendant's decision not to rehire Crenshaw.  Nonetheless, the Industrial Board proceeded to hear the case on the merits, *i.e.*, deciding whether Defendant had good cause to not hire Crenshaw. After the Industrial Board issued a decision denying Plaintiff's grievance, Plaintiff requested a rehearing.  The request for rehearing was granted on May 21, 2007.

On July 1, 2007, Defendant voluntarily re-hired Crenshaw.  On July 16, 2007, the Industrial Board re-heard the Crenshaw grievance. This time, the Industrial Board ruled that Crenshaw should be reinstated as a part-time employee and that Crenshaw was entitled to back pay, seniority and fringe benefits.  Plaintiff thereafter requested a "clarification" of the Industrial Board's July 16, 2007

decision because it believed Crenshaw should have been reinstated on a full-time basis.  On August 20, 2007, the Industrial Board ruled in Plaintiff's favor and moved Crenshaw to full-time status. Defendant requested a re-hearing of the Industrial Board's August 20, 2007 decision, again arguing that the grievance was not arbitrable.  Following another hearing, the Industrial Board denied Defendant's  request for re-hearing and ruled the grievance was arbitrable.  After Plaintiff filed its Complaint in Wayne County Circuit Court, Defendant removed the action to this Court on February 25, 2008.

### III. STANDARDS OF REVIEW

**A.      Summary Judgment**

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The nonmoving party must do more than show that there is some metaphysical doubt as to

the material facts.  It must present significant probative evidence in support of its opposition to the

motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v.*

*Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

**B.**     **Arbitration Awards**

It is well-settled law that federal courts still determine the threshold question of arbitrability.

*AT&T v. Communication Workers of America,* 475 U.S. 643, 649 (1986) ( "arbitration is a matter

of contract and a party cannot be required to submit to arbitration any dispute which he has not

agreed to submit").  *See also Cleveland Electric Illuminating Co., et al. v. Utility Workers Union*

*of America, Local 270,* 440 F.3d 809, 812-813 (6th Cir. 2006); *Armco Employees Independent*

*Federation v AK Steel Corp.,* 252 F.3d 854 (6th Cir. 2001) (courts determine substantive

arbitrability).  In addition, a court will vacate an arbitration award if (a) the award contravenes

federal labor laws, (b) it is rendered in "manifest disregard of the law," or (c) it is contrary to well-

defined public policy ascertained by reference to the law and legal precedent. *W.R. Grace & Co. v.*

*Rubber Workers Local 759,* 461 U.S. 757, 766 (1983); *Merrill Lynch Pierce Fenner & Smith, Inc.*

*v. Jaros,* 70 F.3d 418, 421 (6th Cir. 1995); *NFL Players Assn. v. Pro-Football, Inc./Washington*

*Redskins, et al,* 567 F.3d 1525 (D.C. Cir. 1995).

Review of an arbitration award is limited.  A court's scope of review is to determine  whether

the arbitration award "draws its essence" from the CBA. *United Paperworkers Int'l Union v. Misco,*

*Inc.,* 484 U.S. 29, 36 (1987).  In *Michigan Family Resources, Inc. v. Service Employees*

*International Union Local 517M,* 475 F.3d 746 (2007), the Sixth Circuit established a modified

standard for review of an arbitration award.  The standard of review now consists of a limited set

of inquiries:

(1)     Did the arbitrator act outside his authority by resolving a dispute not committed to
        arbitration?

(2)     Did the arbitrator commit fraud, have a conflict of interest or otherwise act
        dishonestly in issuing the award?

(3)     In resolving any legal or factual disputes in the case, was the arbitrator arguably
        construing or applying the contract?

*Michigan Family Resources, Inc.,* 485 F.3d at 753. In this case, there are no allegations of fraud, conflict of interest or dishonesty of the arbitrator. Accordingly, the Court need not consider the inquiry in part (2) above.

The parameters of the *Michigan Family Resources, Inc.* standard are still evolving. In *Peterbilt Motors Co. v. UAW International Union and Local 1832,* 219 Fed.Appx. 434, 2007 U.S. App. Lexis 5594 (6th Cir., 2007) (unpublished); 181 L.R.R.M. 3046, the Sixth Circuit vacated an arbitrator's award. After noting the *Michigan Family Resources, Inc.* standard, the *Peterbilt* court stated:

> We explained that we will find that the arbitrator was "arguably construing the contract" so long as "the arbitrator appeared to be engaged in interpretation" of the contract. *Id.* But we acknowledged that we cannot ignore the specter that an arbitration decision could be so "ignorant" of the contract's "plain language," as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be so untethered to the terms of the agreement ... that it would cast doubt on whether the arbitrator indeed was engaged in interpretation.

2007 U.S. App. Lexis at 17. Likewise, in *Michigan Sugar Co. v. Bakery, Confectionery, Tobacco Workers and Grain Millers, Locals 259-G, 260-G,* 2007 WL 1098470; 182 L.R.R.M. 2084 (E.D. Mich. 2007), the court vacated an arbitrator's award because the arbitrator created a definition of the term "termination" that the Court determined was not in the collective bargaining agreement. The *Michigan Sugar Co.* court stated:

> The arbitrator makes no reference to the source of this "interpretation" in the collective bargaining agreement. In the Court's view, however, this reading of an unambiguous provision of the collective bargaining agreement fails to "draw its essence from the bargaining agreement" and constitutes "the arbitrator's own brand of industrial justice."

2007 WL 1098470, at *3 (citation omitted).

## IV. ANALYSIS

Plaintiff asserts, and the Industrial Board concluded, that when Defendant became the manager of the Cultural Center Garage in January 2007, Defendant was obligated to hire Crenshaw

pursuant to Article IV of the CBA.  Specifically, Plaintiff relies on the following sentence in Article

IV:

> The acquiring Employer will retain any employee who has
> continuously worked at a location for ninety (90) days or more.

Defendant argues that the Industrial Board (a) acted outside of its authority, and (b) was not

construing or applying the contract because the Industrial Board decided a situation not covered by

the CBA.  The Court agrees.  Plaintiff's reliance on only the last sentence of Article IV is misplaced

because that sentence, standing alone, does not reflect the purpose or content of Article IV.  In its

entirety, Article IV provides (emphasis added):

**ARTICLE IV**
**TRANSFER OF COMPANY TITLE OR INTEREST**

> It is understood by the parties that Park-Rite Detroit is not the owner
> of the lots covered by this Agreement and merely acts as the manager
> for such lots. Accordingly, Park-Rite Detroit is not in a position to
> guarantee that a new manager will either accept or reject his
> collective bargaining contract. To this extent, the Agreement shall be
> binding upon the parties hereto, their successors, administrators,
> executors and assigns. ***In the event that Park-Rite Detroit is sold,***
> ***transferred or taken over by sale, transfer, lease, assignment,***
> ***receivership or bankruptcy proceeding, and the purchaser or***
> ***assignee, continues as manager, he or she shall continue to be***
> ***subject to the terms and conditions of this Agreement for the life***
> ***thereof.*** It is understand by this Section that the parties hereto shall
> not use any leasing device to a third party to evade this contract.
> Park-Rite Detroit shall give notice of the existence of this Agreement
> to any purchaser, lessee, assignee of the operation covered by this
> Agreement or any part thereof. Such notice shall be in writing, with
> a copy sent to the Union.
>
> The acquiring Employer will retain any employee who has
> continuously worked at a location for ninety (90) days or more.

As the heading and the highlighted sentence of Article IV demonstrate, the purpose of Article

IV is to make the CBA binding upon a party that **acquires Defendant** by "sale, transfer, lease,

assignment, receivership or bankruptcy proceeding."  Stated another way, Article IV is a typical

"change of control" provision that, among other things, protects Plaintiff/its union members in the

event the current ownership of Defendant changes.  Article IV protects the Plaintiff/its union

6

members by requiring the new ownership to fulfill the terms of the CBA.  In the instant case, however, no such event occurred because there was no change of ownership of Defendant in any manner.  Therefore, Article IV (and all of its provisions) are meaningless in determining Defendant's obligation, if any, to hire employees of another entity upon Defendant's assumption of a management contract previously held by that entity.

Based on the plain language of the CBA, including Article IV, the Court concludes that the arbitrator in this case (the Industrial Board) was not even "arguably construing the contract" by "engag[ing] in interpretation" of the CBA.  To the contrary, the Court finds that the Industrial Board's disregard of the CBA's "plain language" makes implausible any contention that the Industrial Board was construing the contract. *See Peterbilt,* 2007 U.S. App. Lexis at 17.  The Court further concludes that the Industrial Board's "reading of an unambiguous provision of the collective bargaining agreement fails to 'draw its essence from the [CBA]' and constitutes 'the arbitrator's own brand of industrial justice.'" *Michigan Sugar Co.,* 2007 WL 1098470, at *3 (citation omitted).  The Court therefore holds that the Industrial Board's arbitration award to Plaintiff (and Crenshaw) must be vacated because the Industrial Board's decision does not "draw[] its essence" from the CBA. *Misco, Inc.,* 484 U.S. at 36.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment and to Vacate Arbitration Award is GRANTED.  Judgment shall be entered accordingly.

IT IS SO ORDERED.


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  February 17, 2009

CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 17, 2009.

S/Marie E. Verlinde
Case Manager
(810) 984-3290